FILED

July 28, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:33 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| CHAD INGRAM,<br>          Employee,<br>v.<br>GROCERS ICE & COLD STORAGE<br>CO., INC.,<br>          Employer,<br>and<br><br>ZURICH AMERICAN INSURANCE<br>CO.,<br>          Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 2016-06-2191<br><br>State File No. 21968-2016<br><br><br>Judge Joshua Davis Baker |

## COMPENSATION HEARING ORDER

This matter came before the Court for a Compensation Hearing on July 18, 2017. The parties settled initial benefits, so the only remaining issue for resolution is Mr. Ingram's entitlement to increased permanent partial disability benefits under Tennessee Code Annotated section 50-6-207(3)(D) (2016) because he was not working for Grocers Inc. ("Creation Gardens")[1] when his initial compensation period expired. The central legal issue is whether Creation Gardens fired Mr. Ingram for cause, precluding recovery of increased benefits. The Court holds that Creation Gardens fired Mr. Ingram for cause, denies his claim for increased benefits, and dismisses his case.

## History of Claim

While working as a driver for Creation Gardens, Mr. Ingram broke his left wrist in March 2016 after falling from a truck when the pull strap for the door snapped. Creation Gardens accepted the claim and provided Mr. Ingram medical and temporary disability benefits. Dr. Phillip Coogan repaired Mr. Ingram's wrist, assigned him an impairment

---

[1] Creation Gardens is the name of the Nashville area branch of Grocers Inc. The company sells and delivers produce and other items to Nashville area restaurants.

rating of 4% to the body as a whole, and released him to return to work in September 2016. Afterward, the parties reached a settlement in which Mr. Ingram received payment for eighteen weeks of permanent partial disability benefits.[2] This payment satisfied all permanent partial disability benefits for Mr. Ingram's initial compensation period, which expired January 12, 2017.

Mr. Ingram returned to work for Creation Gardens at the same rate of pay but was terminated for reasons he did not "understand" less than three weeks after the Court approved his settlement and before expiration of his compensation period. He characterized his termination as "workplace retaliation for getting injured on the job," asserting Creation Gardens terminated him to avoid paying his pre-injury wage, approximately $7.00 more per hour than other drivers earned. He admitted working without difficulty from September until his termination on December 9, 2016.

In addition to his own testimony, Mr. Ingram introduced testimony from three supervisors: Eric Allen, Logan Vincent and Michael Sprouse. While they agreed that Mr. Ingram performed well in his job and some even agreed he went above the "call of duty," none participated in the termination decision. However, Mr. Sprouse referenced Mr. Ingram's "insubordinate" and confrontational behavior, saying Mr. Ingram "had it out" with Robert Noble, the operations manager for the Nashville division.

In testimony, Mr. Noble described Mr. Ingram's work history and explained his termination. At the time of his injury, Creation Gardens had promoted Mr. Ingram from driving into training for an operations position. After moving into this position, staff from Creation Garden's in Bowling Green, Kentucky began supervising Mr. Ingram. Despite the change in supervision, Mr. Ingram continued to work from the Nashville office. After he returned to work following his injury, however, Creation Gardens did not have that operations position available, so Mr. Ingram began working again as a driver in Nashville. He also came back under Mr. Noble's supervision.

After Mr. Ingram returned, Mr. Noble documented two customer complaints concerning Mr. Ingram in September 2016 and several confrontations he had with Mr. Ingram in October and December 2016. Mr. Noble explained that a Creation Gardens customer complained that Mr. Ingram rudely retrieved some milk crates during a delivery. Another customer complained Mr. Ingram intentionally displayed a "split" in his pants, exposing his underwear to several people in its bakery during a delivery. In October 2016, Mr. Noble began having confrontations with Mr. Ingram over policy and minor workplace problems. Specifically, Mr. Ingram became angry when he needed to

---

[2] At this hearing, the parties stipulated to the degree of impairment, date of injury and compensation rate, and also agreed that Creation Gardens paid all medical bills related to Mr. Ingram's injury.

leave early, yet staff added stops to his route and added eggplant to his "pick sheet" when it was not in stock. Mr. Noble said Mr. Ingram slammed his "pick sheet" onto Mr. Noble's desk and demanded to know what he should do about the eggplant. When his tone and manner became increasingly aggressive, Mr. Noble instructed him to clock out.

Mr. Noble's difficulty with Mr. Ingram culminated in two heated confrontations on December 7th and 8th, provoking his termination on the 9th. On the 7th, Mr. Ingram "raised his voice" and acted "disrespectful[ly]" toward Mr. Noble over a new policy. Finally, on the 8th, Mr. Ingram complained vociferously about loads shifting in transit and blamed those who loaded the truck rather than accepting responsibility as a driver. When Mr. Noble implied Mr. Ingram's driving was responsible by saying that no other driver was complaining, Mr. Ingram angrily circled the warehouse to confront drivers about loads shifting during transit. He also complained about new responsibilities and used profane language. The following day, Creation Gardens fired him, citing poor work performance in his separation notice.

### Findings of Fact and Conclusions of Law

The only issue to be determined is whether Mr. Ingram is entitled to increased permanent partial disability benefits as a result of his termination prior to expiration of the compensation period. Creation Gardens claims it fired him for cause, which would bar recovery of those benefits. Mr. Ingram asserts his termination was pretext. The Court holds that Mr. Ingram failed to establish entitlement to additional benefits and denies his claim.

The following general principle governs adjudication of this compensation hearing where Mr. Ingram seeks increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) (2016). In order to prevail, Mr. Ingram "must establish by a preponderance of the evidence that he [is] entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

Any employee who does not work for his pre-injury employer when the "period of compensation" ends may file a new petition for benefit determination seeking "increased benefits." The amount of benefits due depends upon several factors, including the employee's age, educational achievement, and county of residence. Tenn. Code Ann. § 50-6-207(3)(B) (2016). However, if the employer fires the employee for "misconduct connected to the employee's employment," the Workers' Compensation Law bars the employee from recovering increased benefits. *Id*. at 50-6-207(3)(D)(ii). As this is an affirmative defense, Creation Gardens bears the burden of proving employment-related misconduct resulted in termination.

3

An employer is entitled to enforce workplace rules and decorum, so the Court must determine if (1) the actions precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were the motivation for dismissal. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *8-9 (Dec. 11, 2015).

While Mr. Ingram qualified to request additional benefits because Creation Gardens terminated him before his initial compensation period expired, the Court finds Creation Gardens fired Mr. Ingram for misconduct. His supervisor and others portrayed his behavior as confrontational, argumentative, insubordinate and disrespectful. He behaved rudely or crassly enough to warrant complaints from customers in September; he was told to clock out early after a confrontation with his supervisor in October; he challenged implementation of a new policy in December; he used profanity; and he angrily confronted other drivers when arguing with his supervisor about shifting loads. The Court finds this behavior violated ordinary workplace expectations and precipitated Mr. Ingram's termination. An employer cannot be required to tolerate inappropriate behavior in the workplace simply because an employee suffered a work-related injury.

Further, Mr. Ingram presented insufficient evidence that his termination was a pretext. He did not deny or refute any witness' characterizations of his behavior. Instead, he alleged he was fired because Creation Gardens did not want to pay his pre-injury wages, which were significantly higher than other drivers' wages. The Court does not find that argument persuasive. While it is unfortunate his operations-training position was unavailable when he returned, he admitted earning his pre-injury wage and working without difficulty. Other than the fact that Creation Gardens paid him more money than other drivers, no proof indicated Creation Gardens targeted him for dismissal. In fact, supervisors at Creation Gardens felt favorably toward him until his inappropriate behavior escalated into challenging his supervisor's authority and control.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Ingram's claim for increased benefits is denied, and the case is dismissed with prejudice.

2. The Court assesses the $150.00 filing fee to Grocers Inc. pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2017), for which execution shall issue as necessary.

3. Absent an appeal of this order by either party, the order shall become final thirty days after issuance.

**ENTERED ON THIS THE 28TH DAY OF JULY, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

# APPENDIX

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Employer's Pre-Hearing Statement and Exhibits
5. Employee's Witness and Exhibit List
6. Employer's Motion to Quash Subpoenas of Eric Allen, Logan Vincent, and Scotty Sprouse

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulated Findings of Facts of the Parties:
- The alleged date of injury is March 16, 2016.
- The workers' compensation rate is $465.12 per week.
- The impairment rating is 4 percent to the body as a whole
- The initial period of compensation expired January 12, 2017
- Mr. Ingram is forty-nine years old.
- Mr. Ingram has a twelfth grade education
- All medical benefits have been paid.

Exhibits:
- EXHIBIT 1: Creation Gardens Employee Warning Report
- EXHIBIT 2: "Effective Immediately" Letter
- EXHIBIT 3: Separation Notice
- EXHIBIT 4: Creation Gardens Invoice with "Special Instructions"

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 28th day of July, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Chad Ingram | X | | X | 253 Fairway Drive<br>Nashville, Tennessee  37214<br>Chadingram47@gmail.com |
| David Weatherman | | | X | David.weatherman@zurichna.com |

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7